KATHLEEN M. HARTMAN, Esq. (SBN 219934)
**CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**
2601 Main Street, Suite 800
Irvine, California 92614
Tel : (949) 261-2872
Fax : (949) 261-6060
Email : khartman@ctsclaw.com

Attorneys for Plaintiff,
**JEANNETTE S. CLARK**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNETTE S. CLARK,<br><br>Plaintiff,<br><br>vs.<br><br>DANA WOODY & ASSOCIATES, INC., DANA WOODY BREWER, TRES CHIC BOUTIQUE, VETERANS TRANSITION SERVICES, INC. and DOES 1 – 25,<br><br>Defendants. | Case No: 09-CV-2931 CAB (DHB)<br>JUDGE: Cathy Ann Bencivengo<br>COURTROOM 4C, 4th Floor<br>COMPLAINT DATE: 12/30/09<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**JURY TRIAL DEMANDED**<br><br>DISCOVERY CUT OFF: 04/02/12<br>MOTION CUT OFF: 06/25/12<br>MSC DATE: 05/17/12<br>TRIAL DATE: 07/29/13 |

- 1 -

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Jeannette Clark filed this action on December 30, 2009. The First Amended Complaint includes cause of action for: (1) Breach of Fiduciary Duty in Connection with 401k Plan; (2) Delinquent Contributions to 401k Plan; (3) Recovery of Benefits Due and Enforcement of Rights of 401k Plan; (4) Breach of Fiduciary Duty in Connection with Healthcare Plan; (5) Delinquent Contributions to Healthcare Plan; (6) Recovery of Benefits Due and Enforcement of Rights of Healthcare Plan; (7) Fraud; (8) Failure to Pay Wages under California State Law; (9) Failure to Pay Wages Under the FLSA; (10) Failure to Pay for Vacation Time; (11) Waiting Time Penalties; (12) Late Payment of Wages; (13) Payment of Wages with Non-Negotiable Checks; and (14) Unfair Business Practices.

These claims arose from Plaintiff's employment at Dana Woody and Associates, Inc. ("DWA"). DWA is owned and operated by Dana Woody Brewer ("Brewer"). At the time of Plaintiff's employment, Brewer also owned and was involved with Tres Chic Boutique ("Tres Chic"), and Veterans Transition Services, Inc. ("VTS"). DWA, Brewer, Tres Chic, and VTS were all named as defendants in this action.

Plaintiff seeks attorneys' fees and costs from DWA and Brewer related to her ERISA, wage and hour, and alter ego claims against DWA and Brewer only under Labor Code sections 1194 and 2699(g)(1) and 29 USC § 1132(g)(1). Accordingly, Plaintiff requests an award of $26,121.17 in costs and $556,627.50 in attorneys' fees. Declaration of Kathleen Hartman ¶¶ 9 and 10. These numbers do not include time spent or costs incurred associated with the fraud and vacation claims or the claims against VTS.

## II. STATEMENT OF FACTS

On December 30, 2009, Plaintiff filed the Complaint in this action. After Plaintiff exhausted her administrative remedies as to the PAGA causes of action she filed a First Amended Complaint on March 2, 2010. [Doc. No. 3.]

In April 2012, Plaintiff brought a motion for summary adjudication against DWA

and Brewer as to the first, second, fourth, and fifth causes of action based on ERISA violations, the eighth and ninth causes of action for wage and hour violations under the California Labor Code and FLSA, the eleventh cause of action for waiting time penalties, the twelfth cause of action for late payment of wages, the thirteenth cause of action for payment of wages with non-negotiable checks, and the fourteenth cause of action for Unfair Business Practices. [Doc. No. 46.] On July 13, 2013 the Court ruled that on the first, second, fourth, and fifth causes of action in connection with the 401k plan, DWA and Brewer were fiduciaries and that the only matter left to decide was damages. [Doc. No. 74, at p. 8]. As to the eighth, ninth, eleventh, thirteenth, and fourteenth causes of action, the Court found for Plaintiff but the issue of damages was left for decision by trial. [Doc. No. 74, at pp. 10-14.]

On June 25, 2014, VTS brought a motion for summary adjudication as to the issue of alter ego. [Doc. 66.] On December 4, 2012, Plaintiff brought a motion for summary adjudication on the issue of alter ego against DWA, Brewer, and VTS. [Doc. 98.] The Court denied both motions on February 12, 2013. [Doc. 147.]

On July 29, 2013, Plaintiff's case proceeded to a jury trial to determine damages as to DWA and Brewer only. On August 1, 2013, the jury made findings of fact. On September 3, 2013 the Court entered its Final Findings of Fact and Conclusions of Law as to Plaintiff's 1-8 and 10-12 causes of action. [Doc. No. 214.] The Court found Plaintiff damaged in the amount of $824.67 as to the first through third causes of action. [Doc. No. 214]. As to the fourth and sixth causes of action, the Court found Plaintiff damaged in the amount of $40.00. [Doc. No. 214]. The jury determined the number of hours Plaintiff worked each week and based on this finding, the Court found Plaintiff damaged in the amount of $90,234.97, plus applicable interest, on the eight cause of action. [Doc. No. 214.] Plaintiff was awarded $7,452 in waiting time penalties for the eleventh cause of action. *Id.* The jury found for Plaintiff on the twelfth cause of action and the Court ruled that $700 to be distributed to Plaintiff, the Labor and Workforce Development Agency, and the State Treasury for this claim. *Id.* As to the thirteenth cause of action, Plaintiff and the

Labor and Workforce Development Agency were awarded a combined total of $300. *Id.* Plaintiff did not prevail on the seventh cause of action for fraud cause of action or the tenth cause of action for vacation time. [Doc. Nos. 198 and 214.]

On February 3, 2014, Ms. Clark proceeded to a three day bench trial on her alter-ego liability claims against DWA, Brewer, VTS, and Tres Chic. [Doc. Nos. 223-226.] On February 14, 2014, the Court found Ms. Clark had established by preponderance of the evidence that Brewer is the alter-ego of DWA. [Doc. 232.] However, the Court further found that Clark had not established by preponderance of the evidence that VTS was the alter-egos of DWA of Brewer.

During the pendency of the case, the parties participated in four Mandatory Settlement Conferences. Plaintiff was also required to bring motions to compel against DWA, Brewer, and VTS in order to obtain requested discovery.

### III. LEGAL ARGUMENT

#### A. Attorneys' Fees and Costs are Warranted by Statute

Under California law, awarding attorney's fees to an employee is "mandatory" in unpaid wage claims. *Drumm v. Morningstar, Inc.*, 695 F.Supp.2d 1014, 1018 (N.D.Cal.2010). The eighth, eleventh, twelfth, and thirteenth causes of action entitle Plaintiff to recover attorneys' fees and costs pursuant to Labor Code sections 1194, and 2699(g)(1). Specifically, Labor Code section 1194 is a one-way fee-shifting provision that provides attorneys' fees for unpaid minimum wages and overtime. *Earley v. Superior Court,* 79 Cal.App.4th 1420, 1429 (2000).

Pursuant to 29 USC section 1132(g)(1), in any action under this subchapter by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party. "As a general rule, ERISA employee plaintiffs should be entitled to a reasonable attorney's fee 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1984) quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Plaintiff successfully brought

six causes of action on her ERISA claims pursuant to 29 USC sections 1104, 1106, 1109, 1132(a)(2), and 1145 as is entitled to her attorneys' fees and costs.

Plaintiff's counsel is seeking recovery of $26,121.17 in costs, which is reduced by costs directly attributable to VTS and an estimate $1,000 reduction of costs that are not possible to itemize by defendant. Decl. Hartman at ¶ 9. Plaintiff is also seeking $556,627.50 in fees.

### 1. The Lodestar Approach is the Proper Method for Calculation of Attorneys' Fees

"If state substantive law governs a case, then an award of attorney fees is also governed by state law." *Muniz v. United Parcel Service, Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). In order to determine what constitutes a reasonable award, the Supreme Court has held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, (1983) 461 U.S. 424, 433. This calculation is known as the "lodestar" amount, and is "presumed to be the reasonable fee." *Blum v. Stenson,* 465 U.S. 886, 897 (1984). The trial Court then has discretion to adjust the lodestar amount to take into account any unique circumstances of the case. *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1218 (2008). Factors to consider in adjusting the lodestar include: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award." *Id.* (citation omitted.)

In ERISA actions, the Supreme Court uses a hybrid lodestar/multiplier approach in determining the amount of attorney's fees. *Van Gerwen v. Guarantee Mut. Life Co.,* 214 F.3d 1041(9th Cir. 2000) citing *Hensley,* 461 U.S. 424. Under the hybrid lodestar/multiplier approach, once the court determines the "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, the Court may then adjust the lodestar upward or downward using a

"multiplier" based on factors not included in the initial calculation of the lodestar. *Hensley*, 461 U.S. at 434 n. 9. The fact that the attorneys' fees incurred exceed the amount of the award is not a deterrent to awarding full fees. *California Housing Finance Agency v. E.R. Fairway Assoc.* (1995) 37 Cal.App.4th 1508.

When Plaintiff's counsel receives a new file, a client matter number is assigned. Decl. Thompson at ¶ 2. Hours worked on a file are logged into a program called Tabs on a daily basis by the individual performing billable work. *Id.* at ¶ 3. Persons billing on a file keep contemporaneous track of billable hours. *Id.* Costs are also tracked by client matter number and are kept track of in Tabs. *Id.* at ¶ 5. Attached at Exhibit A to the Declaration of Kathleen Hartman are the time entries and costs recorded on this case.

As of March 6, 2014, the firm billed 1,609.80 hours on this litigation. Decl. Hartman at Ex. A. From that number, Plaintiff's counsel deducted 183.7 as hours directly attributable to either the fraud claim, vacation claim, or VTS. Decl. Hartman at ¶ 7. Some of the remaining hours are a mixture of time that included all defendants. As to general motions/work performed that involved all defendants, Plaintiff's counsel deducted an additional 47 hours attributable to VTS. *Id.* The rational used was either to reduce the time by one-third or to reduce the time billed by an amount commensurate with the work applicable to VTS. Plaintiff's counsel reduced the time billed at the alter ego trial by 15 hours by estimating this was the amount of time at trial devoted exclusively to VTS. Taking these deductions into account, Plaintiff's counsel reduced the 1,609.80 hours of time by 245.7 to 1,364.40. The hours worked at the various hourly rates are as follows:

| **Name** | **Hours** | **Rate** | **Total** |
|---|---|---|---|
| Kathleen Hartman (Attorney) | 976 | $450 | $439,200.00 |
| Robert Thompson (Attorney) | 1 | $450 | $450.00 |
| Jessica Lulli (Attorney) | 352.90 | $300 | $105,870.00 |
| Thomas O'Connor (Attorney) | 28.50 | $300 | $8,550.00 |

| Bryan Owens (Attorney) | 1 | $300 | $300.00 |
| Bryan Owens (Law Clerk) | 5.50 | $175 | $962.50 |
| Michael Shin (Paralegal) | 7.40 | $175 | $1,295.00 |
| **Grand Total** | | | $556,627.50 |

As explained in more detail in the attached Declaration of Kathleen Hartman, there is ample additional evidence to support the lodestar and the attorneys' fees requested.

Should the Court wish to consider a multiplier, Plaintiff's counsel notes that there were difficult legal issues as to the regular rate of pay. Additionally, Plaintiff's counsel took this matter on contingency. CTSC has funded this litigation since 2009 without payment. A significant number of hours were expended on this case that precluded other employment by the handling attorneys. Further, Plaintiff's counsel attempted in good faith to resolve this action early in the litigation with a reasonable settlement offer of $175,000 after receiving a favorable decision on the motion for summary adjudication as to the ERISA and wage and hour claims. There were no attempts by Plaintiff's counsel to increase the fees or engage in needless litigation.

**2. Plaintiff's Attorneys' Hours In This Litigation Are Reasonable**

Plaintiff filed this case over four years ago in December 2009 [Doc. No. 1.] During the course of the many years of contentious litigation, Plaintiff's counsel has done the following: propounded extensive discovery, reviewed numerous documents related to Plaintiff's 401(k) and healthcare plan, wage and hour claims, and alter-ego liability claims related to DWA and Brewer; taken and defended various depositions; successfully brought and defended numerous motions, including three motions for summary adjudication; attended mandatory settlement conferences; and successfully obtained a verdict at trial. Indeed, the Court Docket in this case has 235 entries as of the drafting of this motion.

The work performed by Plaintiff's counsel is detailed in the billing report at

Exhibit A to the Declaration of Kathleen Hartman.

### a. Motions for Summary Adjudication and Trial

On July 13, 2013, Ms. Clark successfully brought a motion for summary adjudication on numerous issues related to Ms. Clark's ERISA and California wage and hour claims.

As for Ms. Clark's alter-ego liability claims against Ms. Brewer, on February 12, 2013, the Court denied Ms. Clark's motion for summary adjudication as to alter-ego. [Doc. No. 147]. However, on February 14, 2014, the Court found Ms. Clark had established by the preponderance of the evidence that Brewer is the alter-ego of DWA. [Doc. No. 232].

### b. Additional Motion Practice

Ms. Clark brought numerous motions throughout the litigation including the following: four motions to exclude Defendant's expert witnesses; motions to compel discovery responses; motion for sanctions for failing to comply with a Court Order; opposition to a motion to continue trial; seven motions in limine; and oppositions to Defendants' motions in limine.

### c. Discovery

Plaintiff's counsel engaged in extensive discovery. Discovery in this case included written discovery and depositions. Plaintiff propounded three sets of special interrogatories and two sets of request to produce documents to DWA and Brewer and responded to two sets of special interrogatories and two sets of request to produce. Plaintiff's counsel produced over 500 documents during the course of discovery and reviewed over 1,000 documents during the course of litigation. For Plaintiff's wage and hour causes of action, Plaintiff had the burden of proving she was misclassified as exempt and not paid all her hours worked. Plaintiff's counsel had to show all Plaintiff's hours worked without accurate time records or pay statements. Plaintiff's counsel relied upon employment documents, her work product, and testimony in order to prove the case. For Plaintiff's ERISA claims, Plaintiff's counsel had to hire an expert and review related

documents. As for Plaintiff's alter-ego liability claims against Brewer and DWA, counsel reviewed more than one thousand pages of business records, personal checks, tax information, and had to take numerous depositions.

### d. Depositions

There were extensive depositions required in this litigation of witnesses at a substantial cost to Plaintiff. Plaintiff's counsel deposed Dana Woody Brewer, Patsy Edwards, Darby Steuer, and twice deposed Thomas Reid in order to prepare for trial on Plaintiff's ERISA, and California wage and hour claims. Ms. Brewer, Ms. Edwards, and Ms. Steuer all had percipient knowledge of the hours Ms. Clark worked while at DWA during the relevant time period. Mr. Reid was DWA's accountant and designated as an expert witness to testify to Ms. Clark's ERISA and alter-ego claims. Ms. Clark also sat for deposition in this matter.

### e. Mediation and Settlement Conferences

On July 8, 2011, the parties appeared at a mandatory settlement conference ("MSC") before Magistrate Judge Porter. Because multiple legal issues were contested in this case, the mediation required extensive legal research and briefing. No settlement numbers were discussed. The parties participated in a MSC on May 17, 2012, before Judge Bartick. DWA and Brewer offered $10,000, which was rejected, and Ms. Clark demanded $175,000, which was also rejected. On August 30, 2012, the parties again participated in a MSC before Judge Bartick and the parties were unable to reach a settlement. On October 4, 2013, after trial on Ms. Clark's ERISA and California wage and hour claims for which she was successful, the parties again participated in a MSC before Judge Bartick. The parties were unable to reach a settlement. DWA and Brewer made no settlement offer that even came close to six figures.

### 3. Ms. Clark's Attorneys' Rates are Reasonable

The Ninth Circuit instructs district courts to use "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation" when determining a reasonable hourly rate. *Chalmers v. Los Angeles*, 796

1  F.2d 1205, 1211 (9th Cir.1985). The Ninth Circuit has held that the district court may
2  also compensate for a delay in payment either by applying attorney's current rates to all
3  hours billed during the course of litigation, or by using attorney's historical rates and
4  adding a prime rate enhancement. *In re Washington Public Power Supply Sys. Secs.*
5  *Litigation*, 19 F.3d 1291, 1305 (9th Cir.1994).

6  The rates associated with the hours are reasonable. The current billing rates for
7  cases of this type at Callahan, Thompson, Sherman & Caudill LLP are: $450 for Senior
8  Attorneys/Partners, $300 for Associates, $175 for Paralegals. These rates are reasonable
9  because they reflect the skill and experience of the attorneys working at the rate, and they
10 reflect the rates charged by comparable firms for work of this type. The declarations of
11 Kathleen Hartman and Jessica Lulli, the two attorneys who spent the majority of the time
12 working on this case, lay out in more detail their experience levels.

13 It is well settled within the Ninth Circuit that the prevailing market rate in the
14 community is indicative of a reasonable hourly rate. *Jordan v. Multnomah County*, 815
15 F.2d 1258, 1262–1263 (9th Cir.1987). Plaintiff's counsels' rates are reasonable when
16 compared to work of this type performed by similarly qualified attorneys in the Southern
17 District of California. On February 6, 2014, in *Sea Prestigio, LLC v. M/Y Triton, et al.*,
18 Case No. 10-cv-2412-BTM-MDD, the Honorable Barry Ted Moskowitz in the Southern
19 District of California found $500 per hour a reasonable rate for a partner at Wright and
20 L'Estrange. On June 11, 2013, in *Breidenbach v. Experian et al.*, Case No. 3:12-cv-
21 1548-GPC-BLM, the Honorable Gonzalo P. Curiel of the Southern District of California
22 found $550 was a reasonable rate for an attorney with 25 years of experience and $335
23 was a reasonable rate for a 3 ½ year attorney from the Crowley Law Group. On
24 September 10, 2013, in *Dennis v. Kellogg, Co.*, Case No. 09-cv-1786-IEG (WMC), the
25 Honorable Irma E. Gonzalez of the Southern District of California found counsels'
26 hourly rates ranging from $145 (for law clerks) to $950 (for name partners) fell within
27 typical rates for attorneys of comparable experience. On January 14, 2013, in *Smith v.*
28 *CRST Van Expedited, Inc.*, Case No. 10-cv-1116-IEG (WMC), the Honorable Irma E.

Gonzalez of the Southern District of California found counsel Mark Pope from Pope, Berger, & Williams LLP with over 10 years of employment litigation experience hourly rates ranging from $150 to $450 in an employment action for failure to pay minimum wage action <u>were below typical rates for attorneys of comparable experience</u>.

Finally, these billing rates are reasonable for Callahan, Thompson, Sherman & Caudill LLP because even higher amounts were approved in other cases. For example, in July 2010 the Honorable Jeffrey T. Miller of the Southern District of California in the multidistrict litigation case of *In re Jamster Marketing Litigation*, Case No. 05-cv-0819-JM(CAB) approved an award of attorneys' fees applying a rate of $675 for Mr. Thompson and Ms. Hartman. [Case No. 05-cv-0819-JM(CAB), Doc. Nos. 395 and 402.] Higher rates were also approved as reasonable in February 2010 by the Honorable Morrison C. England, Jr. of the United States District Court, Eastern District of California in the case of *Wright v. Linkus Enterprises, Inc., et al.*, Case No. 2:07-cv-01347-MCE-CMK. [Case No. 2:07-cv-01347-MCE-CMK, Doc. No. 113.] These cases were class action cases, which is why Plaintiff's counsel is now requesting a rate of $450 for Mr. Thompson and Ms. Hartman.

## IV. CONCLUSION

Because the attorneys' fees and costs are fundamentally fair and reasonable, Plaintiff requests the Court award her $26,121.17 in costs and $556,627.50 in attorneys' fees.

DATED: March 10, 2014      **CALLAHAN, THOMPSON, SHERMAN & CAUDILL, LLP**

By    *s/Kathleen Hartman*
       KATHLEEN M. HARTMAN
       Attorneys for Plaintiff
       **JEANNETTE S. CLARK**

G:\PLF\0090021\Mtns\mt atty fees.doc

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically and notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's EM/ECF System.

March 10, 2014        _/s/ Kathleen M. Hartman_

                                          Kathleen M. Hartman